CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

8/1/2018

JULIA C. DUDLEY, CLERK
BY: s/ CARMEN AMOS
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| **DONALD SCOTT GORDON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 6:17CV38 |
| | ) |
| **NANCY A. BERRYHILL,** | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff Donald Scott Gordon ("Gordon") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for supplemental security income ("SSI") and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Gordon alleges that the Administrative Law Judge ("ALJ") erred by failing to properly: (1) account for Gordon's moderate impairment in concentration; (2) evaluate whether Gordon met or equaled a listing; and (3) weigh the medical evidence. Gordon also alleges that the Appeals Council erred by not remanding on the grounds of additional evidence. I find that the ALJ failed to include a narrative discussion describing how the evidence supports Gordon's residual functional capacity ("RFC"). Accordingly, I **RECOMMEND GRANTING in part** Gordon's Motion for Summary Judgment (Dkt. No. 18), **DENYING** the Commissioner's Motion for Summary Judgment (Dkt. No. 22) and **REMANDING** this matter for further consideration by the Commissioner.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to

support the Commissioner's conclusion that Gordon failed to demonstrate that he was disabled under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"); see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often) (citation omitted). In Monroe, the Court of Appeals found that the ALJ did not "satisfactorily explain his decision to partly discredit [the claimant's] testimony regarding the symptoms and functional limitations resulting from his impairments." Monroe, 826 F.3d at 189. Similarly, I find that remand is appropriate here because the ALJ's opinion lacks the specific analysis that would allow for meaningful review.

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

**CLAIM HISTORY**

Gordon filed for SSI and DIB in November 2012, claiming that his disability began on December 31, 2011, due to a traumatic brain injury. R. 25, 122, 342. Gordon's date last insured was December 31, 2017; thus he must show that his disability began on or before this date and existed for twelve continuous months to receive DIB. R. 381; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied Gordon's applications at the initial and reconsideration levels of administrative review. R. 122–32, 133–43, 149–56, 157–67. On September 22, 2015, ALJ H. Munday held a hearing to consider Gordon's claims for SSI and DIB. R. 43–101. Counsel represented Gordon at the hearing, which included testimony from vocational expert Mia Heikkala. On September 25, 2015, the ALJ entered her decision analyzing claims under the familiar five-step process[2] and denying Gordon's claim for benefits. R. 25–37.

The ALJ found that Gordon was insured at the time of the alleged disability onset and that he suffered from the severe impairments of cognitive disorder and depression.[3] R. 28. The ALJ determined that these impairments, either individually or in combination did not meet or medically equal a listed impairment. R. 28–29. The ALJ specifically considered listing 12.02 (organic mental disorders), listing 12.04 (affective disorders), and listing 12.05 (intellectual

---

[2] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[3] Gordon was 40 years old on the alleged disability onset date, making him a younger person under the Act. R. 146.

disability). Regarding Gordon's mental impairments, the ALJ found that Gordon had mild restrictions in activities of daily living, moderate difficulties in social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. R. 28–29.

The ALJ concluded that Gordon retained the RFC to perform a full range of work at all exertional levels, but with certain nonexertional limitations. R. 30. Specifically, the ALJ found that Gordon could have no exposure to hazardous conditions, perform only simple, routine tasks, make only simple work related decisions, with few workplace changes, perform no work at a fixed production-rate pace, and have only occasional interaction with the general public, co-workers, and supervisors. Id.

The ALJ determined that Gordon is able to perform his past relevant work as a cardboard box maker, store laborer, kitchen helper, and commercial cleaner. R. 35. The ALJ also determined that he could perform other jobs that exist in significant numbers in the national economy, such as laundry folder, inspector/hand packager, and cleaner/polisher. R. 36. Thus, the ALJ concluded that Gordon is not disabled. R. 37. Gordon appealed the ALJ's decision and the Appeals Council denied his request for review on March 7, 2017. R. 1–4.

## ANALYSIS

Gordon alleges that the ALJ failed to properly: (1) account for Gordon's moderate impairment in concentration; (2) evaluate whether Gordon met or equaled listing 11.18; and (3) weigh the medical evidence. Gordon also alleges that the Appeals Council erred by not remanding when it received additional evidence, specifically the March 21, 2016 eligibility determination from the Department of Aging and Rehabilitative Services ("DARS").

4

### A. Medical History

1. Severe Brain Injury

Gordon was struck by an automobile while riding a moped in May 1986, when he was 15 years old. He suffered a severe head injury and was in a semi-comatose state for three to four weeks following the accident. R. 447–48, 450, 471. Gordon was diagnosed with a severe closed brain injury, spent two months in a neurological intensive care unit, then six weeks receiving occupational, physical, speech, and recreational therapy at the acute rehabilitation unit at Virginia Baptist Hospital, and ultimately eight months at Woodrow Wilson Rehabilitation Center receiving therapy related to schooling and other neuropsychological activities. R. 452–456, 473. Gordon graduated from high school in 1990, receiving special education services.[4] Gordon later sought vocational rehabilitations and underwent several examinations; however, he did not receive any other treatment related to his brain injury.

2. Opinion Evidence and Reports

In July 1997, Gordon underwent a psychological evaluation by Robin Hawks, L.P.C., a school psychologist at the Center for Learning Potential. R. 473–78. Testing indicated that Gordon's verbal abilities were within the borderline range of intellectual functioning and his performance abilities, common sense judgment, and reasoning were within the low average range. R. 475. Though the report indicated that Gordon "did not view himself as having

---

[4] Prior to the accident, in September 1985, Gordon tested in the 97th percentile for space relations and mechanical reasoning, and in the 85th percentile for numerical ability and abstract and verbal reasoning. R. 409. Following the accident, in October 1987, Gordon tested in the 10th percentile for space relations, 60th percentile for mechanical reasoning, 20th percentile for numerical ability, 25th percentile for abstract reasoning, and 5th percentile for verbal reasoning. R. 407.

difficulties with concentration and impulsivity," Ms. Hawks noted that his profile "suggest[s] problems with memory and cognitively based attention and concentration skills." R. 475. She further found that while his academic skills are sufficient for a number of technical areas "his poor memory and attention skills are likely to be a significant barrier both while in training, as well as in the work world." R. 477. Ms. Hawks ultimately gave Gordon a "[good] prognosis for vocational adjustment." R. 478.

In February 2013, Gordon presented to David S. Leen, Ph.D. for a consultative examination. R. 429–33. Testing indicated "cognitive abnormality negatively impacting [Gordon's] verbal comprehension intellectual abilities," and included a Verbal Comprehension Index score in the lowest 2% of the population of his age. R. 431. Gordon also had significantly reduced performance in memory functioning. R. 432. Dr. Leen concluded that "[secondary] to [Gordon's] marked impairments in memory functioning and limitations in specific areas of intellectual functioning, together with his daily depressed moods, he is currently unable to consistently perform work activities of any kind an a timely and appropriate manner with or without additional supervision." R. 432–33. Dr. Leen also concluded that Gordon could not manage his own funds, maintain reliable attendance, or deal appropriately with coworkers, supervisors, or the public. R. 432–33.

State agency psychologists John Kalil, Ph.D. and Howard Leizer, Ph.D., reviewed Gordon's medical records in March and October 2013, respectively, and both found moderate limitations in concentration, persistence, or pace, and marked limitations in the ability to carry out detailed instructions. R. 128, 152. However, both emphasized that, despite his limitations,

Gordon had "consistently earned [substantial gainful activity] in the last 15 years which shows he is capable of performing simple, unskilled work."[5] R. 128, 152.

In March 2014, Gordon underwent a comprehensive vocational evaluation with the Department for Aging and Rehabilitative Services ("DARS") with evaluator Donna T. Gutierrez. Gordon did not meet the work rate or rate of production standards on a mix of vocational tests, but Ms. Gutierrez noted that often individuals are able to reach competitive speed with practice. R. 489. Ms. Gutierrez also recommended that Gordon seek positions similar to those he has held in the past instead of trying to learn new tasks, "due to issues with memory." R. 485. Gordon was ultimately determined to be eligible for vocational rehabilitation services from DARS on March 21, 2016, noting that "due to a disability, [Gordon] needs significantly more support or supervision to learn and perform a job than normally required of persons of equivalent age, education, training or experience" and due to his "TBI . . . Gordon need[s] close supervision, routine tasks, and repeated task demonstrations . . . ." R. 533–34.

In September and November 2014, Gordon attended an assistive computer technology evaluation, an occupational therapy evaluation, and a vocational evaluation at Woodrow Wilson Rehabilitation Center. R. 514–17, 519–24. The counselor recommended that Gordon seek repetitive and consistent work. While the counselor noted that Gordon "appears cognizant of ways to compensate with memory deficits" she also indicated he was "unable to identify one specific thing he may need a daily reminder for apart from going to bed." R. 514. The vocational evaluation noted that Gordon made a "clear effort" but that he had significant difficulty correctly following instructions and needed close supervision. R. 519. The evaluation recommended

---

[5] Wage records do show multiple years of earnings following Gordon's severe brain injury that meet the substantial gainful activity threshold. R. 318-19. The ALJ notes that Gordon had earnings constituting substantial gainful activity during 1993-98, 2000-05, and 2007-11. R. 33. However, Gordon's work following his alleged disability onset date did not rise to the level of substantial gainful activity. R. 27.

supported employment services with a job coach. R. 520. The job coach hours were recommended because of Gordon's need for extended instruction and supervision, but were "anticipated to decrease and then be discontinued" as he learned specific job duties. R. 521.

In August 2015, Gordon underwent a neuropsychological evaluation by Joseph C. Conley, Jr. Ph.D., LCP, on referral from counsel. 508–13. Dr. Conley administered various tests and found debilitating neurocognitive deficits, which Dr. Conley attributed to Gordon's traumatic brain injury at age 15. R. 512. Dr. Conley concluded that due to his neurocognitive deficits Gordon "would pose a risk to himself and others in many, if not most, workplaces." R. 513.

**B. Mental Impairments**

Gordon argues that the ALJ failed to properly address his moderate limitations in concentration in assessing his RFC and failed to provide proper hypothetical questions to the vocational expert that addressed these limitations. Gordon further argues that the ALJ failed to properly assess Gordon's other mental limitations, including the need for supervision, retraining, difficulties communicating with supervisors, and the need for accommodations to perform work. Pl.'s Br. at 5, Dkt. No. 19. The Commissioner counters that the ALJ adequately explained how the RFC finding accounts for Gordon's moderate limitations in concentration and that substantial evidence supports the ALJ's RFC and the ALJ's rejection of additional limitations. R. 26. The Commissioner emphasizes the ALJ's conclusion that, "despite [Gordon's] moderate limitations, [his] work history proved that he was capable of maintaining a job [that] fit his capabilities." D.'s Br. at 25, Dkt. No. 23. Here, I find that the "ALJ['s] fail[ure] to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record ... frustrate[s] meaningful review," and makes remand appropriate. Mascio, 780 F.3d at 636 (quoting Cichocki

v. Astrue, 729 F.3d 172, 177 (2d. Cir. 2013)). As in Mascio, "the ALJ has determined what functions he believes [claimant] can perform, but his opinion is sorely lacking in the analysis needed for [the Court] to review meaningfully those conclusions." Id. at 636-37.

SSR 96-8P requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC.[6] See Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996); Teague v. Astrue, No. 1:10-cv-2767, 2011 U.S. Dist. LEXIS 153878, at *23, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P at *7; Meadows v. Astrue, No. 5:11-cv-63, 2012 U.S. Dist. LEXIS 115150, at *24, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 U.S. Dist. LEXIS 132972, at *15-16, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010)); Monroe, 826 F.3d at 189 (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

In discussing Gordon's medical records, the ALJ noted his history of a closed brain injury, but indicated that "his treatment for mental conditions during the period at issue has been extremely limited and minimal overall, consisting of evaluation at Woodrow Wilson

---

[6] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

9

Rehabilitation Center without any significant treatment recommendations." R. 30, 31. The ALJ emphasized that Gordon was "successfully employed as a warehouse stock worker for almost 5 years, with this job ending in 1997 when the company closed (not because [Gordon] was unable to do this job)" and had, had various other periods showing substantial gainful activity. R. 31. Thus, the ALJ concluded that Gordon's allegations of disabling symptoms or functional limitations are belied by his limited treatment, combined with his "demonstrated ability to work at a level constituting annual substantial gainful activity subsequent to his traumatic brain injury." Id.

     In her hypothetical question to the vocational expert, the ALJ imposed simple, routine tasks, simple decision-making (with few workplace changes), no fixed production rate jobs, and no exposure to hazardous conditions. R. 30. However, the ALJ did not explain why the limitations imposed sufficiently accommodated Gordon's mental limitations, including his memory problems. In support of her determination that Gordon has "at most, moderate difficulties" in maintaining concentration, persistence, or pace the ALJ emphasized Gordon's statement in his December 2012 Function Report that his conditions affected his ability to concentrate, but not his abilities to memorize, complete tasks, understand, or follow instructions." R. 29. However, Gordon testified at the hearing that, following the accident, he struggled "mainly" with his memory. R. 67. His mother also testified at the hearing that he had significant issues with his memory and judgment. R. 75. Further, the evaluations in the record, including Ms. Hawks, a school psychologist, Dr. Leen, the consultative examiner, Donna Gutierrez, the evaluator for DARS, and Dr. Conley, Jr., who conducted a neuropsychological evaluation, all found significant impairments in memory functioning.[7] In her 1997 evaluation,

---

[7] The ALJ assigned these opinions little weight, with the exception of Ms. Gutierrez, who she assigned partial weight. R. 32–33.

Ms. Hawks concluded Gordon's "poor memory and attention skills are likely to be a significant barrier both while in training, as well as in the work world." R. 477. Dr. Leen administered a variety of tests and found "marked impairments in memory functioning . . . ." R. 432.[8] Ms. Gutierrez recommended Gordon seek positions similar to those he had previously held, "due to memory issues." R. 485. Dr. Conley noted that neurocognitive test results were positive for memory impairment in verbal and nonverbal domains and diagnosed major neurocognitive disorder and dementia, both due to Gordon's traumatic brain injury. R. 513. The vocational evaluation with DARS ultimately resulted in a finding that Gordon was disabled, could not perform at a consistent pace as required to meet production or quality standards, and would need support services to learn and perform a job, including close supervision. R. 532–34. In fact, even the state agency doctors, to whom the ALJ gave considerable weight, found that Gordon had memory impairment. R. 149. These state agency doctors acknowledge that "Gordon's WAIS scores, memory scores, and depressive symptoms during a psychological CE suggest [he] would be unable to maintain a normal work week." R. 153, 163. However, these doctors still conclude, based primarily on Gordon's past employment with substantial gainful activity, that he "should be able to perform simple, unskilled work activities." Id.

Thus, without adequate explanation, the ALJ largely dismissed the medical opinions in the record and the various test results showing that Gordon had a memory impairment that would significantly limit his ability to maintain concentration and attention for extended periods, satisfactorily complete training for a job, and engage in competitive employment. Indeed, the vocational expert testified that most employers would not tolerate the accommodation of a job

---

[8] The ALJ assigned the opinion of Dr. Leen little weight, noting that he "appears to have heavily based his opinion on [Gordon's] self-report and the results of this one-time examination, instead of a record review. R. 32.

coach, and that if an employee needed continued and frequent retaining, they would be unemployable. R. 98–99. Instead, the ALJ gave "considerable weight" to the state agency doctors' conclusion that Gordon retained the ability to perform simple, unskilled work, even though he would have moderate difficulty completing a normal workweek and "might have memory issues with regard to adapting in the workplace." R. 34. The ALJ does not explain how, with his documented memory issues and difficulty completing a normal work week, Gordon should still be able to learn and perform simple, unskilled tasks, even with few workplace changes and no fixed-rate production.

At bottom, the ALJ seems to find that, because Gordon previously had substantial gainful employment – following his head injury but prior to his alleged onset date – he is still able to engage in substantial gainful employment. However, the ALJ does not adequately address the opinion evidence which contradicts this conclusion, nor is the ALJ able to point to sufficient medical evidence supporting this conclusion. Thus, as in Mascio, this court is "left to guess about how the ALJ arrived at his conclusions." 780 F.3d at 637; see also Monroe, 826 F.3d at 189 (quoting Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013)) ("a necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling, including a discussion of which evidence that ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence); see also Patterson v. Comm'r of Soc. Sec. Admin., 846 F.3d 656, 663 (4th Cir. 2017) (emphasizing the importance of "[r]eaching a decision in a well-reasoned and documented fashion" and admonishing ALJs to "[s]how your work.").

Because I find that remand is warranted based on the ALJ's failure to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC,

Gordon's additional allegations of error will not be decided. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments). However, upon remand, the Commissioner should take into consideration Gordon's remaining allegations of error, including his argument that the ALJ failed to properly weigh the medical evidence. Here, the ALJ's discussion of certain expert opinions was sparse. See Monroe, 826 F.3d at 190 (noting that an ALJ must include "a narrative discussion describing how the evidence supports" his "explanation of the varying degrees of weight he gave to differing opinions concerning [the claimant's] conditions and limitations") (internal quotation marks and citation omitted). For example, the ALJ gave Dr. Leen's opinion little weight because it was "heavily based" on the results of a "one-time examination" and Gordon's self-report, and was "inconsistent with the evidence of record." R. 32. However, the ALJ does not specify how the opinion is inconsistent with the evidence of record, other than to state that Gordon had managed to perform substantial gainful activity for a period following his traumatic brain injury.

Finally, on remand, the ALJ should consider the March 21, 2016 eligibility determination from DARS concluding that Gordon was "Most Significantly Disabled (3 or more Functional Limitations)" due to a traumatic brain injury and was eligible for vocational rehabilitation services, in light of the recent case Woods v. Berryhill, 888 F.3d 686, 692 (4th Cir. 2018).[9] In Woods, the Fourth Circuit held that an ALJ must give substantial weight to the North Carolina Department of Health and Human Services ("NCDHHS") prior disability determination, unless the ALJ adequately explains his valid reasons for not doing so. Id. at 694 (and holding that the

---

[9] This new evidence will be subject to the ALJ's consideration on remand because Gordon is insured for DIB through December 31, 2017. See Hunter v. Berryhill, 2017 WL 3948459, at *20 (D.S.C. Aug. 17, 2017), report and recommendation adopted, 2017 WL 3896320 (D.S.C. Sept. 6, 2017)

13

same logic providing that the "SSA must give substantial weight to a Veterans Affairs disability rating" also applies to NCDHHS disability decisions" because both "NCDHHS and Social Security disability insurance benefits 'serve the same governmental purpose of providing benefits to persons unable to work because of a serious disability'") (quoting Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 343 (4th Cir. 2012).

## CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **DENYING** summary judgment to the defendant, **GRANTING in part** plaintiff's motion for summary judgment, and **REVERSING** and **REMANDING** this matter to the Commissioner under sentence four of 42 USC § 405(g).

The Clerk is directed to transmit the record in this case Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

Entered: August 1, 2018

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge